UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIO GOMEZ,<br><br>    Plaintiff,<br>v.<br><br>PEOPLE'S UNITED BANK, d/b/a/ CHITTENDEN BANK, UBI FEDERAL CREDIT UNION, TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and COUNTRY MOTORS II, INC., d/b/a BOB'S DODGE,<br><br>    Defendants. | 3:10-CV-00904 (CSH) |

**RULING ON MOTION FOR JUDGMENT
FOLLOWING ARBITRATION AWARD**

HAIGHT, Senior District Judge:

**I.    INTRODUCTION AND RELEVANT FACTS**

Plaintiff Julio Gomez filed the present Motion for Judgment Following Arbitration Award (the "Motion") [Doc. 86] asking the Court to grant him judgment against defendant Country Motors II, Inc. based upon the award made by arbitrator John Gamm (the "Arbitrator") on August 4, 2011.[1] Under the Federal Arbitration Act (FAA), 9 U.S.C. § 9, this Court must grant the requested judgment unless the award is vacated, modified or corrected. Defendant then filed an Objection to Motion to Confirm Arbitration Award and Application to Vacate and Modify Damages Award (the

---

[1] Because all defendants other than Country Motors II, Inc. have been terminated from this action, Country Motors II, Inc. is referred to herein as "Defendant."

"Objection") [Doc. 91], calling on the Court to vacate or modify the Arbitrator's award. Because Defendant has not met the high standard for vacating or modifying an arbitrator's award, Plaintiff's Motion is GRANTED.

This action arises from Plaintiff's purchase from Defendant (also known as "Bob's Dodge") of two used motor vehicles, a 2007 Chevrolet Trailblazer and a 2006 Nissan Murano (collectively the "Vehicles") between November 2008 and March 2009. A full explanation of the facts of this matter, as determined by the Arbitrator, can be found in the Award of Arbitrator (the "Award"), dated August 4, 2011 and attached to the Motion as Exhibit A [Doc. 86-1]. The following facts are drawn from the Award, familiarity with which is assumed.

Plaintiff, a recent immigrant from Puerto Rico, can neither read nor write and understands little, if any, English. He bought the Trailblazer on behalf of his daughter and son-in-law on or about November 11, 2008, in a transaction in which Defendant's employees engaged in certain deceptive practices, discussed *infra*. When the Trailblazer developed mechanical problems, one of Defendant's employees persuaded Plaintiff to exchange the Trailblazer for the Murano, and on that basis he bought the Murano on March 21, 2009, in a sale that was marked by further deceptions. Plaintiff wanted to leave the Trailblazer at Defendant's dealership, but was told to drive it home, where the "bank" would retrieve it. To his surprise, Plaintiff later found that this "exchange" was a purchase, and he was responsible for two sets of car payments. Plaintiff revoked his acceptance of both Vehicles, and both were repossessed. Despite the assurances Plaintiff received from Defendant to the contrary, his credit was damaged by his failure to make both sets of car payments. As a result, two of Plaintiff's credit lines were reduced, one was canceled, two banks refused to give him credit, and a third bank raised the interest on his credit card debt from 15% to 36%,

approximately.

Plaintiff filed the present action against several defendants on June 9, 2010, alleging multiple statutory violations in connection with the Vehicles. Although he filed claims against multiple defendants and cross-claims and counterclaims were filed, all claims in this matter have been settled, with the exception of Plaintiff's claims against Defendant. On August 25, 2010, Defendant moved to compel arbitration of Plaintiff's claims against it based on mandatory arbitration clauses in the Purchase Orders for the Vehicles. Plaintiff agreed that the arbitration clauses were binding, and Defendant's motion was granted. On August 4, 2011, following extensive consideration of facts, the Arbitrator issued the Award.

In the Award, the Arbitrator found that Defendant and its employees, *inter alia*, (1) added service contracts to the sales documents for the Vehicles without first affording Plaintiff a chance to decline; (2) misrepresented the scope of coverage under those contracts; (3) falsely represented the purchase of those contracts as a precondition for financing; (4) ignored Plaintiff's statement about his monthly payment ability; (5) failed to provide accurate disclosures of finance charges to Plaintiff; (6) failed to display a legally-required buyer's guide in Spanish on the Vehicles; (7) falsely represented the sale of the Murano as an exchange which would relieve Plaintiff of his obligations with respect to the Trailblazer; and (8) falsely represented the Murano as owned by the son of Defendant's owner when in fact it was an auction vehicle. Award at 8-14. The Arbitrator awarded Plaintiff a total of $105,345.28, including compensatory damages, punitive damages, costs and attorney's fees, along with an order that the arbitration fees be borne by Defendant.

On August 8, 2011, Plaintiff filed the present Motion. Because he says he is entitled to reimbursement of $325 in arbitration fees, he requests a judgment of $105,720.28. Defendant filed

the Objection on September 9, 2011, asking the Court to vacate or modify the Award in three respects: (1) reduction of the award for compensatory damages from $10,890.88 to $890.88; (2) vacatur of the award for punitive damages, or in the alternative reduction of that award from $54,454.40 to $4,454.44; and (3) vacatur of the attorney's fees award, or in the alternative reduction of that award from $40,000 to $19,800.  However, Defendant's arguments do not justify those modifications.

## II.     LEGAL STANDARD

When the parties submit a dispute to an arbitrator, the Court should "give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010).  The standard for vacating or modifying such an award is a high one:

> This Court has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process ... To encourage and support the use of arbitration by consenting parties, this Court ... uses an extremely deferential standard of review for arbitral awards.

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138-39 (2d Cir. 2007).  The only "narrow circumstance" at issue here is the Court's review of an award for "manifest disregard of the law."  *Id.* at 139.  "Our review under the doctrine of manifest disregard of the law is highly deferential and such relief is appropriately rare."  *Id.*  An arbitral award is vacated on these grounds only when the petitioner can demonstrate both that (1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the ignored law is well-defined, explicit and clearly applicable to the case.  *Id.*

### III.    ANALYSIS

#### A.    Compensatory Damages

The Arbitrator awarded Plaintiff $10,890.88 in compensatory damages.  Although the Arbitrator found that Defendant violated several statutes, the award was made entirely under the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a *et seq*.  The award consists of $890.88 for certain monetary losses and $10,000 for the damage to Plaintiff's credit.  Award at 14-15.  Defendant makes two arguments for vacatur of the $10,000 portion of that award.  First, Defendant argues that it is unclear how the arbitrator arrived at this figure.  Objection at 4.  This amounts to the assertion that the Arbitrator failed to provide sufficient factual support for his findings.  *Id.* at 4-6.  Such an assertion, however, is not a basis upon which the Court may set aside an arbitral award.  Defendant, in fact, cites no law to support the proposition that this Court is empowered to review the Arbitrator's factual findings or impose a standard for the Arbitrator's justification of his factual findings.

Defendant's second argument is that the Arbitrator ignored his own finding about Connecticut law when he, according to Defendant, granted Plaintiff $10,000 in damages for anxiety.  Objection at 6.  The Arbitrator, considering Plaintiff's claim for damages for emotional distress, acknowledged that there is a split of authority in the Connecticut Superior Court about whether damages for emotional distress are available under CUTPA, and endorsed the position that they are not.  On that basis, the Arbitrator denied damages for emotional distress.  Award at 15.

Defendant's argument rests on the assertion that the Arbitrator nevertheless awarded Plaintiff the $10,000 portion of the award for anxiety.  However, the Arbitrator did not grant these damages for anxiety; he granted them for damage to credit.  Award at 14-15.  It is true that the Arbitrator's

explanation of the compensatory-damages award is confusing. He wrote: "The measure of [Plaintiff's] anxiety is even less susceptible to mathematical formulation." *Id.* at 15. It is not clear what role this statement plays in the award for damage to credit. Nevertheless, the Arbitrator did not say that anxiety was the basis of the award. Rather, he based it on "the additional charges [Plaintiff] incurred for the increase in the Banco Popular interest rate," as well as "the damages [Plaintiff] suffered for reductions in credit limit, withdrawals of credit lines and refusal of credit." *Id.* at 14. The Arbitrator further apparently took into account "fluctuations in principal balances and underlying interest indices, possible default interest assessments and late charges and the time value of money," *Id.* at 15, though he apparently lacked specific numbers for these factors. Contrary to Defendant's assertion that the whole $10,000 was awarded for anxiety, the Arbitrator specifically included $4,620 for increased interest charges that Plaintiff was forced to pay. *Id.* at 14.

The wording of the Award does not make it clear whether anxiety was one of the factors that the Arbitrator considered in setting compensatory damages for damage to credit, but it was certainly not the exclusive or primary factor. The deference that the Court accords to the Arbitrator compels the Court to adopt a charitable interpretation of the Arbitrator's description of the basis for the compensatory-damages award. The Court cannot find, on this basis, that the Arbitrator ignored well-defined law.

    **B.    Punitive Damages**

The Arbitrator awarded Plaintiff $54,454.10 in punitive damages under CUTPA. Observing that punitive damages are available under CUTPA where evidence reveals a reckless disregard for the rights of others or an intentional and wanton violation of those rights, he found that "[t]he totality of [Defendant's] actions ... evinces just such a wanton disregard of [Plaintiff's] rights." Award at

15-16. He found that punitive damages of five times compensatory damages are appropriate. *Id.* at 16.

Defendant makes two arguments in favor of vacating or eliminating the punitive-damages award. First, it argues that its conduct did not meet the level of recklessness necessary to support an award of punitive damages under CUTPA. Objection at 10-11. Defendant is calling on the Court to review the Arbitrator's factual findings, which the Court is not empowered to do. Defendant provides no legal support for the proposition that the Court may substitute its reading of the facts for the Arbitrator's.

Second, it argues that an award of punitive damages under CUTPA that is much larger than the actual damages found constitutes a manifest disregard of Connecticut law. Objection at 9-11. Because Defendant holds that the actual damages are only $890.88, it argues that the punitive damages are 61 times the actual damages. *Id.* at 9. This, of course, is based on Defendant's reading of the actual damages rather than the Arbitrator's.

Defendant provides no citations to Connecticut statutory or case law in support of its argument. Instead, it cites a treatise. Objection at 10. And that treatise is not cited for a "well-defined, explicit" provision of Connecticut law, as required to meet the definition of "manifest disregard." Rather, Defendant reviews the compilation of cases in the treatise and asserts that in most instances the punitive damages awarded under CUTPA are equal to or double the amount of damages. *Id.* at 10-11. It cannot be said in this case that the Arbitrator knew of a governing legal principle but refused to apply it. The assertion that the Arbitrator's award of punitive damages was unusually high does not, in itself, justify vacating or modifying the award.

### C.     Attorney's Fees

The Arbitrator awarded Plaintiff $40,000 in attorney's fees, which sum included $2,627.19 in costs. He based this award on the affidavit of Plaintiff's attorney, the 18-page itemization of the time his attorney and the attorney's staff devoted to the arbitration, a finding that the hourly rates claimed are consistent with rates charged within the legal community for similar services performed by attorneys of comparable skill and experience, and a finding that the time the attorney and his staff spent on the matter was reasonable. Award at 16-17.

Defendant attacks the award of attorney's fees as "unreasonable, unwarranted, excessive and not adequately supported by the documents submitted by [Plaintiff]." Objection at 7. It further challenges the award because it included an award for time worked by a paralegal and a law student intern. *Id.* at 8. It does not identify the exception to the rule of deference to arbitral awards that it claims applies here. Assuming that the argument is that this award constituted manifest disregard of the law, Defendant cites no law that the award might have disregarded. Defendant does not cite any statutory or case law in support of its assertions that $40,000 is excessive or that attorney's fees may not be awarded for work performed by non-attorneys. *Id.* at 7-8. The one court decision that Defendant does cite does not, even in Defendant's account, stand for either of those propositions. *Id.*, *citing Ernst v. Deere & Co.*, 92 Conn. App. 572 (2005).

There is certainly no well-defined law in Defendant's favor on these points. As regards excessiveness, as Plaintiff observes, CUTPA explicitly bases awards of attorney's fees not on the amount of recovery but on work reasonably performed, which was the basis for the Arbitrator's award. Reply to Country Motors' Objection to Motion to Confirm Arbitration Award and Opposition to Application to Vacate and Modify Award (the "Reply") [Doc. 97] at 10, *citing* Conn.

Gen. Stat. § 42-110g(d). As regards work done by paralegals or law students, Plaintiff correctly cites a decision of this Court granting an award for exactly such work. Reply at 11, citing *Gibbs v. Se. Inv. Corp.*, 705 F.Supp. 738, 745 (D.Conn. 1989).

## IV.     CONCLUSION

Plaintiff's Motion for Judgment Following Arbitration Award [Doc. 86] is GRANTED. Pursuant to the FAA, judgment is granted in favor of plaintiff Julio Gomez and against defendant Country Motors II, Inc. in the amount of $105,720.28. The Clerk is directed to enter that judgment and close the case.

SO ORDERED.

Dated: New Haven, Connecticut
June 13, 2012

                                                                  */s/ Charles S. Haight, Jr.*
                                                                   Charles S. Haight, Jr.
                                                                   Senior United States District Judge